1

2

3

4

5

6                       UNITED STATES DISTRICT COURT

7                      EASTERN DISTRICT OF CALIFORNIA

8

9    UNITED STATES OF AMERICA,          No.  2:13-cr-00300-GEB

10              Plaintiff,

11        v.                            **ORDER ON THE GOVERNMENT'S**
                                        **MOTIONS IN LIMINE**
12   RUSSELL EUGENE GILMORE and
     RICHARD DAVID HEMSLEY,
13
              Defendants.
14

15

16        The government moves for multiple pretrial in limine

17   rulings. Each motion is addressed below.

18   **Motion in Limine ("MIL") No. 1**

19        The government moves for an order "bar[ring] any

20   medical marijuana defense[,]" and "prohibiting the defense teams

21   from mentioning, referring to, or alluding to California law on

22   medical marijuana and/or the topic medical marijuana." (Gov't

23   MILs 4:13-15, 5:9-10, ECF No. 106.) The government argues:

24              Under federal law, it is clearly
             established . . . that marijuana is properly
25           listed as a Schedule I Controlled Substance,
             meaning that Congress has determined that
26           marijuana has no current medical use in the
             United States. In Raich v. Gonzales (Raich
27           II), 500 F.3d 850, 864-866 (9th Cir. 2007),
             the Ninth Circuit dismissed as without merit
28           a claim that the Ninth Amendment and the

                                   1

1    Fifth Amendment's due process provisions,
     when combined, protected an alleged
2    fundamental right to distribute, possess, and
     use medical cannabis in compliance with
3    California state law.

4         Most recently, in Sacramento Nonprofit
     Collective v. Holder, 2014 WL 128998 (9th
5    Cir. Jan. 15, 2014[], the Ninth Circuit
     affirmed this Court's ruling and cited
6    favorably . . . Raich II, while again
     rejecting Fifth and Ninth Amendment
7    challenges to the prosecution of marijuana
     violations under the Controlled Substances
8    Act. In doing, the Ninth Circuit held that
     the federal ban on medical marijuana was
9    rationally based.

10        Thus, it is no surprise that the Supreme
     Court had earlier held in United States v.
11   Oakland Cannabis Buyers' Coop., 532 U.S. 483,
     491 (2001), that no medical necessity defense
12   exists for the illegal distribution of
     marijuana because the Controlled Substances
13   Act "reflects a determination that marijuana
     has no medical benefits worthy of an
14   exception." Equally evident, despite
     extensive litigation over many years in
15   numerous cases nationwide, no final court
     ruling has ever held that marijuana should be
16   removed from Schedule I or that federal law
     outlawing marijuana even for alleged medical
17   purposes could not be enforced.

18   (Id. at 4:16-5:8 (internal citations omitted).)

19        Defendants Russell Gilmore ("Gilmore") and Richard

20   Hemsley ("Hemsley") rejoin:[1]

21        Reference to California's medical marijuana
     laws . . . [is] relevant to a possible
22   defense of mistake of law, among other
     defenses. . . . [I]nvestigating officers
23   located 47 medical marijuana recommendations
     at the site of the marijuana garden. Even if
24   some of those recommendations were in fact
     expired, as the government claims, the
25   question of what . . . John Mahan made
     [Defendants] understand about those
26

27   _____
     [1]   Gilmore filed an opposition to the government's in limine motions on
     November 6, 2015. (ECF No. 113.) Hemsley "adopt[ed] and join[ed]" Gilmore's
28   opposition. (ECF No. 116.)

2

1
2
3

> recommendations and state medical marijuana laws, if anything, is potentially relevant to [Defendants'] state of mind and whether [they] mistakenly believed that Mr. Mahan was operating a lawful grow.

4   (Gilmore Opp'n 2:4-19 (internal citation omitted).) Defendants

5   further counter that "[e]ven if the Court finds that California's

6   medical marijuana laws are irrelevant as to common law defenses,

7   the question of whether the defendants complied with those laws

8   is indisputably relevant to whether the government should be

9   precluded from their further prosecution under federal law" under

10  "Section 538 of the Consolidated and Further Continuing

11  Appropriations Act of 2015." (Id. at 3:1-6.)  Defendants argue:

12
13
14
15
16
17
18
19

> In Section 538 . . . , Congress prohibited the Department of Justice from expending any funds to interfere with California's 'implement[ation]' of its 'own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana.' This provision has been extended to December 11, 2015 by a similar appropriations act for 2016. Congress's intention is "plain": "to the extent that" [Defendants'] actions were "in compliance with California law," Section 538 "forbids the Department of Justice from enforcing" the Controlled Substance Act against [them]. . . .

20
21
22

> It makes no difference that Congress limited the Department of Justice's power, as opposed to expressly authorizing individual defendants to assert a new affirmative defense.

23  (Id. at 3:4-20 (internal citation omitted).)

24          The government replies, inter alia:

25
26
27
28

> the legal effect of § 538 on the enforcement action taken by this prosecution is not a jury question, but, instead, is a legal question which defendants should have raised (if they wanted to advance this argument), but did not raise, in a motion to dismiss the indictment. Indeed, it makes no sense for the

1          jury to hear and weigh legal arguments on the
       effect of Congress' passage of § 538 as the
2          jury is not an arbiter of the law, and the
       Court should bar the defendants from
3          mentioning or arguing § 538's effect on this
       case.

4

5   (Gov't Reply 2:18-23, ECF No. 138.)

6         The in limine motion is granted to the extent it seeks

7   to preclude either Defendant from raising as an affirmative

8   defense that he mistakenly believed his conduct was legal under

9   California law. "Knowledge of, or intent to violate the law is

10  not an element of th[e charged] offense[s]." United States v.

11  Scarmazzo, 554 F. Supp. 2d 1102, 1107 (E.D. Cal. 2008)

12  (discussing 21 U.S.C. § 841(a)(1)); see also United States v.

13  Schafer, No. CR S-05-238 FCD, 2007 WL 2121734, at *2 (E.D. Cal.

14  July 24, 2007) (stating 21 U.S.C. § 846 is a "general intent

15  crime[] to which it is not a defense that defendants lacked the

16  intent to violate the law"). Therefore, "Defendants' beliefs

17  concerning the legality of the use of 'medicinal marijuana' are

18  not a proper defense and evidence of their beliefs, or their

19  reasons for those beliefs, are irrelevant to the charges." Id. at

20  *3.

21        The remainder of the motion has not been stated with

22  the concreteness required for a pretrial in limine motion. See,

23  e.g., Weiss v. La Suisse, Soc'y D'Assurances Sur La Vie, 293 F.

24  Supp. 2d 397, 407-08 (S.D.N.Y. 2003) (denying motion to exclude

25  evidence for a "lack[] of specificity[,]" stating "[n]o

26  particular documents or testimony have been identified in the

27  motion"); Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.,

28  No. CV 08-8525 PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May

19, 2010) (stating "motions in limine should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial").

**MIL No. 2**

The government seeks to "preclude the defense teams from introducing and/or admitting at trial any defendant's out-of-court statements because such statements . . . constitute[] inadmissible hearsay." (Gov't MILs 1:24-27.) The government argues: "When [a] defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and is not admissible. Therefore, no defendant may introduce his own prior statements to prove the truth of the matters asserted." (Id. at 5:15-20 (internal quotation marks and citations omitted).)

Defendants rejoin that should any portion of one or more of their recorded statements be admitted, "the 'rule of completeness' set out in Federal Rule of Evidence ("FRE") 106" permits the statement(s) to be introduced in their entirety. (Gilmore Opp'n 4:15-17.) Defendants argue:

> Any allegedly inculpatory portions of [Defendants'] recorded statements offered in isolation would be divorced from necessary context and would mislead the jury both as to the nature of the questions asked and [Defendants'] answers. As a result, the government's motion to exclude the non-inculpatory portions of [Defendants' recorded] statements should be denied.

(Id. at 4:19-5:2 (footnote omitted).)

This motion lacks the concreteness required for a pretrial in limine ruling.

1    **MIL No. 3**

2           The government seeks a pretrial ruling permitting it to

3    "sometimes . . . prove a defendant's incriminating statement by

4    the testimony of the interviewing agent rather than by playback

5    of the [defendant's] recorded interview to help avoid the

6    admission of inadmissible hearsay by a defendant or co-defendant

7    during the interview." (Gov't MILs 6:11-13.) The government

8    argues:

9               The best evidence rule does not bar the
                United States from proving the contents of a
10              defendant's confession through testimony of
                an interviewing agent.
11
                The best evidence rule applies to
12              written documents and recording[s]. However,
                the rule is applicable only when one seeks to
13              prove the contents of the written document or
                recording.
14
                Hence, there is no violation of the best
15              evidence rule when the United States is
                simply proving the contents of the
16              conversation, not the contents of the tape
                recording.
17

18   (Id. at 6:17-7:1 (internal citations omitted).)

19          Defendants counter that the best evidence rule

20   precludes the government from calling the investigating law

21   enforcement officers to testify about a defendant's statements

22   when "th[e] statements are recorded verbatim." (Gilmore Opp'n

23   6:12-13.)

24          This motion lacks the concreteness and sufficient

25   factual context for a pretrial in limine ruling.

26   **MIL Nos. 4-8**

27          The government seeks in motions in limine nos. 4-8 a

28   pretrial ruling permitting expert testimony by law enforcement

6

officers on the following subjects:

> [T]hat marijuana manufacturers oftentimes use firearms and ammunition as tools of the drug manufacturing and trafficking trade to protect their marijuana operation[, and the opinion] . . . that Gilmore possessed his 8 firearms in furtherance of the marijuana manufacturing operation at which he was working[;] . . . .

> . . . .

> . . . The strategic location where Gilmore positioned himself[,] . . . the application of the concept of "insulation" to this drug case[,] and . . . [the opinion] that Gilmore was serving as an armed guard to protect the marijuana garden[;] . . .

> . . . .

> . . . [T]he significance of the two handwritten journal notebooks found in the area where Hemsley slept/camped[;] . . . .

> . . . .

> . . . [T]he manufacture of marijuana plants and the trafficking of marijuana[, i.e.,] . . . how marijuana is grown from seed or clones[, that] marijuana is an annual plant which dies off each year as compared to a perennial plant that comes back yearly[, that] before the marijuana plant dies off at the end of the growing season, the marijuana plant species will attempt to re-propagate itself by having the male marijuana plants pollinate the female marijuana plant buds (flowers or colas) to generate seeds from which future marijuana plants can germinate and grow; [that] seeded marijuana plants generally have less THC or tetrahydrocannabinol (the psychotropic drug the marijuana users desire) which is the reason why sophisticated marijuana manufacturers cull male marijuana plants before the male plants can pollinate the female marijuana plants (the culling of male marijuana plants is described in [Hemsley's] notebooks[,] . . . why buds (flowers or colas) from unpollinated female marijuana plants are more desirous and valuable than pollinated marijuana plants[,] the range (4-6 months) of time it takes to grow a marijuana

plant outdoors in the area of El Dorado
County where defendants' marijuana was
located[,] . . . the approximate range of
plant size (a few feet to approximately 18
feet) of marijuana grown outdoors in El
Dorado County[,] . . . that marijuana plants
grown outdoors will yield varying amounts of
"bud", but typically range from approximately
four ounces to over several pounds per
plant[, and] . . . that, in 2012, in the
northern California area, the wholesale price
of marijuana bud per pound ranged from
approximately $1,000-1,500 per pound of
marijuana bud[; and]

. . . .

. . . [The] identification through . . .
visual, smell, and touch senses of the
marijuana plants seized in this case.

(Gov't MILs 8:16-25, 10:13-17, 10:20-23, 11:18-12:7, 12:11-13.)

Defendants counter that "the Court should preclude any law enforcement officer designated as an expert under Rule 702 from also testifying as a fact (or lay) witness." (Gilmore Opp'n 8:21-23.)[2] Defendants argue that "[w]hile there is no 'categorical prohibition' on an expert also serving as a fact witness[,] . . . the Court can most clearly protect against the harms of such dual testimony by precluding any of the government's law enforcement witnesses from also testifying as experts." (Id. at 9:7-12.) Defendants also request in their opposition "that the Court hold a Daubert/Kumho hearing before trial or, in the alternative and at a bare minimum, inquire into [the proffered expert testimony's] reliability at trial through

---

[2] In their opposition, Defendants also argued that "the government should be precluded from introducing *any* expert testimony for failure to comply with the rules concerning expert notice." (Gilmore Opp'n 8:5-9.) That argument was later withdrawn "[i]n light of the [expert] notice that the government provided on October 30, 2015[,] and the continuance of the trial date." (Gilmore Reply to his MILs Nos. 2-4 3:2-7, ECF No. 135.)

1 voir dire" since "[t]he government has provided no information

2 explaining why it believes its proffered expert testimony is

3 reliable." (Id. at 8:14-20.)

4      The government replies to Defendants' dual lay/expert

5 witness argument as follows:

6      The simple response to defendants' contention
     is found in United States v. Freeman, 498 F.
7      3d 893, 904 (9th Cir. 2007), . . . which
     rejected a categorical bar to the dual
8      testimony of experienced officers as expert
     and lay witness . . . .
9

10      In the instant case, the United States
     respectfully suggests that the Court instruct
11      that the jury should only consider as expert
     testimony such testimony from witnesses who
12      are allowed by the Court to testify as
     experts on the [above-specified] topics
13      . . . . The Court should instruct the jury
     that any testimony from the witnesses on
14      other subjects should be considered non-
     expert and merely percipient witness
15      testimony. Such instructions to the jury will
     cure any problems from the dual role of
16      experienced agents testifying as experts and
     percipient witnesses.

17 (Gov't Reply 5:2-20.)

18      The in limine record lacks sufficient factual context

19 to determine pretrial whether the referenced expert testimony is

20 admissible. Further, Defendants have not shown that a pretrial

21 ruling should issue concerning the use of a law enforcement

22 officer as both a lay and expert witness. As stated by the Ninth

23 Circuit in Freeman:

24      [T]he use of . . . agents as both expert and
     lay witnesses is not so inherently suspect
25      that it should be categorically prohibited.
     Testimony of this kind may save time and
26      expense, and will not necessarily result in
     juror confusion, provided that the district
27      court engages in vigilant gatekeeping. We
     think that it is sufficient to emphasize the
28      necessity of making clear to the jury what

> the attendant circumstances are in allowing a government case agent to testify as an expert. If jurors are aware of the witness's dual roles, the risk of error in these types of trials is reduced.

United States v. Freeman, 498 F.3d 893, 904 (9th Cir. 2007) (internal citation omitted).

**MIL No. 9**

The government "moves this Court for an order prohibiting all defense teams from mentioning the possible punishment a defendant will face if convicted in this case[,]" arguing "[t]he issue of punishment is irrelevant to the task given to the jury and must not be considered by them in any event." (Gov't MILs 12:25-13:3.)

Defendants rejoin:

> because the law is settled in this area, [Defendants] do[] not oppose the government's motion as a general matter. However, if any co-defendant testifies as a cooperating witness for the government, [Defendants] should be allowed to question that witness as to the punishment associated with conviction. Such punishment would be relevant to the cooperating witness's motivation and credibility.

(Gilmore Opp'n 9:16-10:2.)

The government has not shown that a pretrial ruling on this in limine motion should issue since it is unknown whether either Defendant will testify in this case.

Dated:  January 6, 2016

GARLAND E. BURRELL, JR.
Senior United States District Judge

10