UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUSSELL EUGENE GILMORE and RICHARD DAVID HEMSLEY,<br><br>Defendants. | No. 2:13-cr-00300-GEB<br><br>**ORDER ON THE GOVERNMENT'S MOTIONS IN LIMINE** |

The government moves for multiple pretrial in limine rulings. Each motion is addressed below.

**Motion in Limine ("MIL") No. 1**

The government moves for an order "bar[ring] any medical marijuana defense[,]" and "prohibiting the defense teams from mentioning, referring to, or alluding to California law on medical marijuana and/or the topic medical marijuana." (Gov't MILs 4:13-15, 5:9-10, ECF No. 106.) The government argues:

> Under federal law, it is clearly established . . . that marijuana is properly listed as a Schedule I Controlled Substance, meaning that Congress has determined that marijuana has no current medical use in the United States. In Raich v. Gonzales (Raich II), 500 F.3d 850, 864-866 (9th Cir. 2007), the Ninth Circuit dismissed as without merit a claim that the Ninth Amendment and the

1

> Fifth Amendment's due process provisions, when combined, protected an alleged fundamental right to distribute, possess, and use medical cannabis in compliance with California state law.
>
> Most recently, in Sacramento Nonprofit Collective v. Holder, 2014 WL 128998 (9th Cir. Jan. 15, 2014[], the Ninth Circuit affirmed this Court's ruling and cited favorably . . . Raich II, while again rejecting Fifth and Ninth Amendment challenges to the prosecution of marijuana violations under the Controlled Substances Act. In doing, the Ninth Circuit held that the federal ban on medical marijuana was rationally based.
>
> Thus, it is no surprise that the Supreme Court had earlier held in United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 491 (2001), that no medical necessity defense exists for the illegal distribution of marijuana because the Controlled Substances Act "reflects a determination that marijuana has no medical benefits worthy of an exception." Equally evident, despite extensive litigation over many years in numerous cases nationwide, no final court ruling has ever held that marijuana should be removed from Schedule I or that federal law outlawing marijuana even for alleged medical purposes could not be enforced.

(Id. at 4:16-5:8 (internal citations omitted).)

Defendants Russell Gilmore ("Gilmore") and Richard Hemsley ("Hemsley") rejoin:[1]

> Reference to California's medical marijuana laws . . . [is] relevant to a possible defense of mistake of law, among other defenses. . . . [I]nvestigating officers located 47 medical marijuana recommendations at the site of the marijuana garden. Even if some of those recommendations were in fact expired, as the government claims, the question of what . . . John Mahan made [Defendants] understand about those

---

[1] Gilmore filed an opposition to the government's in limine motions on November 6, 2015. (ECF No. 113.) Hemsley "adopt[ed] and join[ed]" Gilmore's opposition. (ECF No. 116.)

2

>recommendations and state medical marijuana laws, if anything, is potentially relevant to [Defendants'] state of mind and whether [they] mistakenly believed that Mr. Mahan was operating a lawful grow.

(Gilmore Opp'n 2:4-19 (internal citation omitted).) Defendants further counter that "[e]ven if the Court finds that California's medical marijuana laws are irrelevant as to common law defenses, the question of whether the defendants complied with those laws is indisputably relevant to whether the government should be precluded from their further prosecution under federal law" under "Section 538 of the Consolidated and Further Continuing Appropriations Act of 2015." (Id. at 3:1-6.) Defendants argue:

>In Section 538 . . . , Congress prohibited the Department of Justice from expending any funds to interfere with California's 'implement[ation]' of its 'own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana.' This provision has been extended to December 11, 2015 by a similar appropriations act for 2016. Congress's intention is "plain": "to the extent that" [Defendants'] actions were "in compliance with California law," Section 538 "forbids the Department of Justice from enforcing" the Controlled Substance Act against [them]. . . .
>
>It makes no difference that Congress limited the Department of Justice's power, as opposed to expressly authorizing individual defendants to assert a new affirmative defense.

(Id. at 3:4-20 (internal citation omitted).)

>The government replies, *inter alia*:
>
>the legal effect of § 538 on the enforcement action taken by this prosecution is not a jury question, but, instead, is a legal question which defendants should have raised (if they wanted to advance this argument), but did not raise, in a motion to dismiss the indictment. Indeed, it makes no sense for the

3

>           jury to hear and weigh legal arguments on the
>           effect of Congress' passage of § 538 as the
>           jury is not an arbiter of the law, and the
>           Court should bar the defendants from
>           mentioning or arguing § 538's effect on this
>           case.

(Gov't Reply 2:18-23, ECF No. 138.)

The in limine motion is granted to the extent it seeks to preclude either Defendant from raising as an affirmative defense that he mistakenly believed his conduct was legal under California law. "Knowledge of, or intent to violate the law is not an element of th[e charged] offense[s]." United States v. Scarmazzo, 554 F. Supp. 2d 1102, 1107 (E.D. Cal. 2008) (discussing 21 U.S.C. § 841(a)(1)); see also United States v. Schafer, No. CR S-05-238 FCD, 2007 WL 2121734, at *2 (E.D. Cal. July 24, 2007) (stating 21 U.S.C. § 846 is a "general intent crime[] to which it is not a defense that defendants lacked the intent to violate the law"). Therefore, "Defendants' beliefs concerning the legality of the use of 'medicinal marijuana' are not a proper defense and evidence of their beliefs, or their reasons for those beliefs, are irrelevant to the charges." Id. at *3.

The remainder of the motion has not been stated with the concreteness required for a pretrial in limine motion. See, e.g., Weiss v. La Suisse, Soc'y D'Assurances Sur La Vie, 293 F. Supp. 2d 397, 407-08 (S.D.N.Y. 2003) (denying motion to exclude evidence for a "lack[] of specificity[,]" stating "[n]o particular documents or testimony have been identified in the motion"); Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc., No. CV 08-8525 PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May

19, 2010) (stating "motions in limine should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial").

**MIL No. 2**

The government seeks to "preclude the defense teams from introducing and/or admitting at trial any defendant's out-of-court statements because such statements . . . constitute[] inadmissible hearsay." (Gov't MILs 1:24-27.) The government argues: "When [a] defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and is not admissible. Therefore, no defendant may introduce his own prior statements to prove the truth of the matters asserted." (Id. at 5:15-20 (internal quotation marks and citations omitted).)

Defendants rejoin that should any portion of one or more of their recorded statements be admitted, "the 'rule of completeness' set out in Federal Rule of Evidence ("FRE") 106" permits the statement(s) to be introduced in their entirety. (Gilmore Opp'n 4:15-17.) Defendants argue:

> Any allegedly inculpatory portions of [Defendants'] recorded statements offered in isolation would be divorced from necessary context and would mislead the jury both as to the nature of the questions asked and [Defendants'] answers. As a result, the government's motion to exclude the non-inculpatory portions of [Defendants' recorded] statements should be denied.

(Id. at 4:19-5:2 (footnote omitted).)

This motion lacks the concreteness required for a pretrial in limine ruling.

5

**MIL No. 3**

The government seeks a pretrial ruling permitting it to "sometimes . . . prove a defendant's incriminating statement by the testimony of the interviewing agent rather than by playback of the [defendant's] recorded interview to help avoid the admission of inadmissible hearsay by a defendant or co-defendant during the interview." (Gov't MILs 6:11-13.) The government argues:

> The best evidence rule does not bar the United States from proving the contents of a defendant's confession through testimony of an interviewing agent.
>
> The best evidence rule applies to written documents and recording[s]. However, the rule is applicable only when one seeks to prove the contents of the written document or recording.
>
> Hence, there is no violation of the best evidence rule when the United States is simply proving the contents of the conversation, not the contents of the tape recording.

(Id. at 6:17-7:1 (internal citations omitted).)

Defendants counter that the best evidence rule precludes the government from calling the investigating law enforcement officers to testify about a defendant's statements when "th[e] statements are recorded verbatim." (Gilmore Opp'n 6:12-13.)

This motion lacks the concreteness and sufficient factual context for a pretrial in limine ruling.

**MIL Nos. 4-8**

The government seeks in motions in limine nos. 4-8 a pretrial ruling permitting expert testimony by law enforcement

6

1  officers on the following subjects:

2           [T]hat marijuana manufacturers oftentimes use
            firearms and ammunition as tools of the drug
3           manufacturing and trafficking trade to
            protect their marijuana operation[, and the
4           opinion] . . . that Gilmore possessed his 8
            firearms in furtherance of the marijuana
5           manufacturing operation at which he was
            working[;] . . . .
6
                   . . . .
7
                   . . . The strategic location where
8           Gilmore positioned himself[,] . . . the
            application of the concept of "insulation" to
9           this drug case[,] and . . . [the opinion]
            that Gilmore was serving as an armed guard to
10          protect the marijuana garden[;] . . .

11                 . . . .

12                 . . . [T]he significance of the two
            handwritten journal notebooks found in the
13          area where Hemsley slept/camped[;] . . . .

14                 . . . .

15                 . . . [T]he manufacture of marijuana
            plants and the trafficking of marijuana[,
16          i.e.,] . . . how marijuana is grown from seed
            or clones[, that] marijuana is an annual
17          plant which dies off each year as compared to
            a perennial plant that comes back yearly[,
18          that] before the marijuana plant dies off at
            the end of the growing season, the marijuana
19          plant species will attempt to re-propagate
            itself by having the male marijuana plants
20          pollinate the female marijuana plant buds
            (flowers or colas) to generate seeds from
21          which future marijuana plants can germinate
            and grow; [that] seeded marijuana plants
22          generally have less THC or
            tetrahydrocannabinol (the psychotropic drug
23          the marijuana users desire) which is the
            reason why sophisticated marijuana
24          manufacturers cull male marijuana plants
            before the male plants can pollinate the
25          female marijuana plants (the culling of male
            marijuana plants is described in [Hemsley's]
26          notebooks[,] . . . why buds (flowers or
            colas) from unpollinated female marijuana
27          plants are more desirous and valuable than
            pollinated marijuana plants[,] the range (4-6
28          months) of time it takes to grow a marijuana

7

>plant outdoors in the area of El Dorado County where defendants' marijuana was located[,] . . . the approximate range of plant size (a few feet to approximately 18 feet) of marijuana grown outdoors in El Dorado County[,] . . . that marijuana plants grown outdoors will yield varying amounts of "bud", but typically range from approximately four ounces to over several pounds per plant[, and] . . . that, in 2012, in the northern California area, the wholesale price of marijuana bud per pound ranged from approximately $1,000-1,500 per pound of marijuana bud[; and]
>
>. . . .
>
>. . . [The] identification through . . . visual, smell, and touch senses of the marijuana plants seized in this case.

(Gov't MILs 8:16-25, 10:13-17, 10:20-23, 11:18-12:7, 12:11-13.)

Defendants counter that "the Court should preclude any law enforcement officer designated as an expert under Rule 702 from also testifying as a fact (or lay) witness." (Gilmore Opp'n 8:21-23.)[2] Defendants argue that "[w]hile there is no 'categorical prohibition' on an expert also serving as a fact witness[,] . . . the Court can most clearly protect against the harms of such dual testimony by precluding any of the government's law enforcement witnesses from also testifying as experts." (Id. at 9:7-12.) Defendants also request in their opposition "that the Court hold a Daubert/Kumho hearing before trial or, in the alternative and at a bare minimum, inquire into [the proffered expert testimony's] reliability at trial through

---

[2] In their opposition, Defendants also argued that "the government should be precluded from introducing *any* expert testimony for failure to comply with the rules concerning expert notice." (Gilmore Opp'n 8:5-9.) That argument was later withdrawn "[i]n light of the [expert] notice that the government provided on October 30, 2015[,] and the continuance of the trial date." (Gilmore Reply to his MILs Nos. 2-4 3:2-7, ECF No. 135.)

8

voir dire" since "[t]he government has provided no information explaining why it believes its proffered expert testimony is reliable." (Id. at 8:14-20.)

The government replies to Defendants' dual lay/expert witness argument as follows:

> The simple response to defendants' contention is found in United States v. Freeman, 498 F. 3d 893, 904 (9th Cir. 2007), . . . which rejected a categorical bar to the dual testimony of experienced officers as expert and lay witness . . . .
>
> In the instant case, the United States respectfully suggests that the Court instruct that the jury should only consider as expert testimony such testimony from witnesses who are allowed by the Court to testify as experts on the [above-specified] topics . . . . The Court should instruct the jury that any testimony from the witnesses on other subjects should be considered non-expert and merely percipient witness testimony. Such instructions to the jury will cure any problems from the dual role of experienced agents testifying as experts and percipient witnesses.

(Gov't Reply 5:2-20.)

The in limine record lacks sufficient factual context to determine pretrial whether the referenced expert testimony is admissible. Further, Defendants have not shown that a pretrial ruling should issue concerning the use of a law enforcement officer as both a lay and expert witness. As stated by the Ninth Circuit in Freeman:

> [T]he use of . . . agents as both expert and lay witnesses is not so inherently suspect that it should be categorically prohibited. Testimony of this kind may save time and expense, and will not necessarily result in juror confusion, provided that the district court engages in vigilant gatekeeping. We think that it is sufficient to emphasize the necessity of making clear to the jury what

9

> the attendant circumstances are in allowing a government case agent to testify as an expert. If jurors are aware of the witness's dual roles, the risk of error in these types of trials is reduced.

United States v. Freeman, 498 F.3d 893, 904 (9th Cir. 2007) (internal citation omitted).

**MIL No. 9**

The government "moves this Court for an order prohibiting all defense teams from mentioning the possible punishment a defendant will face if convicted in this case[,]" arguing "[t]he issue of punishment is irrelevant to the task given to the jury and must not be considered by them in any event." (Gov't MILs 12:25-13:3.)

Defendants rejoin:

> because the law is settled in this area, [Defendants] do[] not oppose the government's motion as a general matter. However, if any co-defendant testifies as a cooperating witness for the government, [Defendants] should be allowed to question that witness as to the punishment associated with conviction. Such punishment would be relevant to the cooperating witness's motivation and credibility.

(Gilmore Opp'n 9:16-10:2.)

The government has not shown that a pretrial ruling on this in limine motion should issue since it is unknown whether either Defendant will testify in this case.

Dated: January 6, 2016

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge